GENERAL ELECTRIC CO. v. SUNDH ELECTRIC CO.

(Circuit Court of Appeals, Second Circuit. April 10, 1918.)

No. 197.

1. PATENTS ☞328—VALIDITY—INFRINGEMENT.

The White patent, No. 969,738, in view of the disclosure of the simultaneous White and Carichoff patent, No. 969,585, which also related to means for cutting out the starting resistance in a motor circuit, held invalid, not showing invention, and furthermore not to have been infringed.

2. PATENTS ☞8—SUBJECT-MATTER OF PATENT—RESULT.

A result in itself cannot be patented.

3. PATENTS ☞328—VALIDITY—INFRINGEMENT.

The McIver patent, No. 874,025, and the White and Carichoff, No. 969,585, both of which relate to means for cutting out the starting resistance in a motor circuit, held valid, but of limited range, and not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Bill by the General Electric Company against the Sundh Electric Company. From the decree in equity, both parties appeal. Reversed and remanded on defendant's appeal, and complainant's appeal dismissed.

Action is on patents to McIver, No. 874,025 (claim 12), to White and Carichoff, No. 969,585 (claims 7, 12 and 14), and to White, No. 969,738 (claims 1 and 19). McIver's application was filed March 8, 1905, and letters issued December 17, 1907. The applications for the other patents in suit were filed together on February 27, 1909, and letters issued on both September 6, 1910. White was an applicant in each case, and in his sole specification he refers to the copendency of White and Carichoff. These patents relate to means for "cutting out" or step by step removal of the starting resistance in a motor circuit. The nomenclature used by the witnesses is not altogether uniform, and we adopt, for purposes of discussion, the usage of plaintiff's chief witness. As here used, "relay" means a pair of supplementary contacts controlling a secondary device, or at least said contacts constitute the essential feature. A "throttle" has for its essential a coil, which carries the motor current and energizes the throttle magnet, which controls the circuit of the contactor magnets.

All the patents, and defendant's alleged infringing system, deal with control both as to certainty and speed of operation, by "current limit"; that is, a section of resistance is cut out each time the motor current falls to a certain limit, and similarly all use as a part of such control plural throttles, a use which in some form antedates all the parties to this suit.

The McIver invention consisted in associating a separate throttle relay with each contactor switch, to the end that before a contactor closes, because of the closing of the particular throttle controlling it, the throttle controlling the succeeding contactor is opened. When any given throttle and its associated contactor worked as designed (on paper), this patentee's system should operate as if each successive designed change in current was a key to lock out of the motor circuit each successive resistance section. The intended operation or energization of the throttle magnet before the contactor magnet was attained by using a "very small magnet not requiring a great many turns"— "quite in contrast to the large heavy coil used for the contactor." The system never received commercial exploitation, if for no other reason (as we find from the evidence) because the predetermined sequence of operation between associated throttles and contactors could not be depended on, there was "a race" between them, and if the contactors came out ahead the results were bad. McIver shows a direct current system, and nowhere in his specification states that he conceives his design, or thought it to be applicable to alternating current. White and Carichoff employ, as did McIver, the concept of a throttle relay that is lifted preceding the closure of its dominating contactor; but in their device each relay is opened whenever the said contactor opens, by reason of a mechanical connection between the contactor lever and the core of the throttle relay. This positive action is their contribution to the art. They, no more than McIver, provided certainly, and by electrical means, for a time interval between the closing of a contactor and the closing of its associated throttle relay. It was expected that the contactor would act before gravity acted on the relay. Sometimes the expectation was disappointed, with injury. These patentees illustrate and describe a direct current system—declaring however that this is but illustrative, because their invention might be applied "to other forms of dynamo-electric machinery and to other types of control."

White added to the White and Carichoff apparatus, as disclosed, a "supplementary maintaining device for insuring" the throttle relay being held open until the contacts of the associated contactor close, and his means consist in a supplementary coil on the relay magnet, which coil is itself short-circuited on final closure of contactor. This acts against gravity and insures the contactor winning the "race"—to continue the simile of the witnesses. This patentee calls his invention an improvement "in a type of control" covered in the copending and referred-to White and Carichoff application. So far as the claims in suit are concerned, his disclosure is the same, except for the improvement just summarized, and he uses the same language as to the system shown and described being "merely illustrative," etc.

Defendant's "automatic starting panel," made in 1915, is designed for alternating current, and follows the suggestions of a controller made and sold by them as early as 1908, except for the substitution of "current limit" control of resistance elimination for a time limit dashpot arrangement. In so substituting, as found below, McIver was infringed, because current limit control involved a holding coil energized by motor current, associated with each contact or switch, and means "operatively related" to each switch for controlling its relay, until closure of contactor; White and Carichoff were held infringed, because each auxiliary switch (throttle relay) is mechanically connected with its associated contactor, so that when the latter is open the former is positively held open. White's supplementary maintaining device found (as was claimed) an equivalent in the elongated cam surface of defendant's throttle lever, which mechanically keeps the throttle contacts at rest until those of the contactors have engaged..

Patents to McIver and White and Carichoff were declared valid and infringed, but that to White was invalidated, because the substantial invention disclosed could not have been conceived without knowledge of White and

Carichoff's disclosure, and such knowledge of a private communication was not contemplated by the statute, wherefore White and Carichoff's patent was regarded not strictly as prior art, but as something known in contravention of statute, wherefore patentable invention was denied to White. From a decree accordingly both parties appealed.

W. K. Richardson and A. D. Salinger, both of Boston, Mass., for plaintiff.

W. B. Whitney, of New York City, for defendant.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1, 2] The relation between White and Carichoff's patent and that to White alone cannot be made plainer than by comparatively considering two of the claims in suit, with phrases italicized which constitute the claim definitions of what by plaintiff's own evidence are the contributions of each patent respectively to the sum of human knowledge.[1]

Plaintiffs, on their appeal in respect of White, seek to identify this case with that of simultaneous patents to the same inventor, as in Benjamin, etc., Co. v. Dale Co., 158 Fed. 617, 85 C. C. A. 439. It is said that the two grants in which White's name appears are but parts or fractions, which added together set forth something useful and novel as to which one joint patent might well have been taken out; wherefore the claims in suit should be regarded as were the claims of separate patents in Thomson-Houston, etc., Co. v. Elmira, etc., Co., 71 Fed. 396, 18 C. C. A. 145. On the other hand, it is fully admitted that, the disclosure of White and Carichoff once known, there was nothing patentable in the improvement of White, and it is plain, as stated below, that White must have known and used what he and his partner had done.

In our opinion the rule contended for by plaintiffs would apply if exactly what White did (not all that he claimed) independently of

---

[1] Claim 12 of White and Carichoff.

"In combination with a power circuit, a plurality of contactors intended for operation in succession to effect certain connections in said power circuit, control circuits for said contactors, auxiliary switches each co-operating with a contactor and arranged to control the control circuit of a succeeding contactor, *a mechanical connection between each contactor and its auxiliary switch whereby when the former is open the latter is positively held open* and when the former is closed the latter is permitted to close, and an electromagnet the energization of which depends upon the current in the power circuit arranged to prevent the closing of said auxiliary switch if the current in the power circuit exceeds a certain value.

Claim 1 of White.

"In combination with a power circuit, a plurality of contactors intended for operation in succession to effect certain connections in said power circuit, auxiliary switches co-operating with certain of said contactors each arranged to control the operation of a succeeding contactor, means for holding each auxiliary switch open while its co-operating contactor is open, and electromagnet co-operating with each auxiliary switch for controlling the closing of said auxiliary switch, *and means for maintaining the auxiliary switch substantially at rest during the closing operation of the co-operating contactor.*

Carichoff amounted to invention; but by admission it did not, and it cannot be that something not patentable becomes so when devised by one of two inventors, as an improvement to their joint apparatus. Putting it another way, if the whole matter had been put in one joint patent, a claim specifically including White's "means," and only differing from others by such inclusion, would not have patentably varied from such others.

But we further hold that defendants have not infringed White, if that patent be thought valid, and mention this because it bears on our view of the whole series of claims in suit. If by the statement of merely functional limitations in his claim, White claims all means for. maintaining the auxiliary switch at rest during the critical instant, his demand is denied. One who, in the newest and least crowded art, claims a means of doing something, only covers what he discloses with reasonable equivalents. To cover all means is to patent a result, which is impossible in terms; and it must indeed be a radically new result of the disclosed means, that cannot be reached by some other path, not falling within the category of "substantially as described." In this instance, since White's supplementary maintaining current is confessedly not per se a patentable improvement, it is impossible to perceive infringement in the use of a mechanical means of reaching the same result. Therefore the appeal of plaintiff is not sustained.

[3] As to the other patents, we do not disagree with the finding below that McIver discloses[2] a theory and plan of inter-related automatically controlling currents that differed from anything earlier shown in the evidence, and that White and Carichoff used that theory in disclosing a controller wherein the mechanical connection between the lever of the contactor and the core of the throttle relay magnet was new. But, when it comes to finding infringement of the suit claims of both patents in defendant's 1915 controller, we are compelled to disagree, because the disclosures which give their true meaning to the claims do not, under the evidence, cover an alternating current device.

We do not intimate that much electrical invention is not applicable to both direct and alternating current apparatus, instances of litigation in which it has been so held are not wanting,[3] but we are of opinion that in this instance the plaintiffs have not borne the burden of affirmatively proving infringement. The inquiry is not as stated by plaintiff whether the "combinations claimed" can be used with direct or alternating circuits, unless it is understood that the claim is good for nothing that is not disclosed or some reasonable equivalent thereof, and that what is reasonable depends on the value or inventive worth

---

[2] Claim 12 is as follows: "In combination, a series of switches arranged to close in automatic progression, a relay associated with each of a plurality of the switches for controlling the operation of succeeding switches, means operatively related to each of said switches for controlling its relay, and a holding coil associated with each relay and energized by motor current."

[3] Thomson-Houston, etc., Co. v. Western, etc., Co., 70 Fed. 69, 16 C. C. A. 642; cf. Western, etc., Co. v. Sperry Electric Co., 58 Fed. 186, 7 C. C. A. 164.

of what is disclosed. A claim can usually be couched in such terms, as at once to comply with office rules, and verbally cover a great deal more than the disclosure teaches the contemporary man of skill in the art, by whose capacity as proven, inventive worth is to be gauged. It would not advance matters to go into details of evidence, but our conclusion on the facts is that McIver and White and Carichoff disclose no means of operating by alternating current, and when with the advantage of from 8 to 11 additional years of electrical growth, a witness was called by plaintiff to prove that the transformation was within the ability of the skilled man, it appeared that not only must the circuits be rearranged, and the magnets utterly changed, but that the very style of magnet suitable for alternating current and used by the witness to show how easy it would have been to turn a direct into an alternate current system, had been invented by one of defendant's witnesses, who got a French patent for it in 1908 and one in this country in 1911. It has often been pointed out how invariably a hostile expert finds that a given device will not work; this case is an example of the perhaps unconscious use of knowledge prevalent at date of trial, to interpret the disclosures of years before.

That McIver says nothing indicative of a belief that his apparatus could be adapted to alternating current has been pointed out, and what White and Carichoff say on the subject is quoted above. We think the language of doubtful import, and think it proved that their apparatus was not suited for alternating current without material unsuggested changes. The court below was of opinion that these two patents contained kernels of new valuable inventive thought, and treated them with a liberality that we must regard as unwarranted. McIver is a perfect example of what has so long been called a paper patent. White and Carichoff, without White's supplementary coil, was never made. As disclosed, with direct current, there was no practical applied worth in them, and when it comes to saying that they taught in respect of alternating current history testifies for defendant.

All the suit patents issued to plaintiff, the inventors were admittedly working for plaintiff; yet that well-known manufacturer never utilized the teachings of these patents of theirs for alternating current, but, on the contrary, now compete with defendant's alleged infringement, by means of a controller patented by White in 1912 and not very closely allied to anything else in evidence. Of course, this was within legal right, but the inference is irresistible that, if the inventions gave anything worth knowing about alternating current controllers, such knowledge would have been utilized and the utilization shown in evidence in this case. We think the fact to be that these patents are rather theories of action than anything reducible to practical value from the specifications, and such patents are entitled to but a limited range. They block invention and prevent achievement, if anything more than their specific disclosures are recognized as within their claims.

In valuing these inventions, we have considered the evidence of prior patents and accepted McIver as a clever theory worked out in di-

rect current on paper and never fruitful in practice, and White and Carichoff as revealing a mechanical device, new enough in its shown use, but which, as inserted in this especial electrical apparatus, almost certainly enabled gravity to get ahead of the current in the throttle coil. If this is all the patentees did, their suggestions must be very directly appropriated to enable them to prevent others from doing. Here there is no direct appropriation, and no more than a dubious reading of too widely drawn claims upon a thing which is electrically wholly different.

The decree is reversed, on the defendant's appeal, and cause remanded, with instructions to dismiss the bill on the ground of noninfringement of McIver and White and Carichoff. The plaintiff's appeal is dismissed, and White's patent held invalid, on the grounds given below. Defendant will recover one bill of costs in this court, and also costs below.